also known as Toby Appellate. Mr. Hart for the appellate, Ms. Bates for the appellate. Good morning, Mr. Hart. You may proceed. Thank you, Madam. My name is Dennis Hart. I appear today for the third time on behalf of Mr. Miller before this court. This time it's for his resentencing that occurred about a year ago. With the court's permission, I'd like to address one issue first, and that is a waiver. The waiver we're concerned about is the government's lead argument about not being able to argue in front of this court the quantity, decisions, the role, and the offense, and the weapons enhancement. I wish to address it first because the government response has some attraction to it, and I need to dispel that in the court's mind as quickly and as cleanly as I can. Their response is that it was not raised in the first or second appeals, and therefore was conceded and cannot be raised in this third appeal. I believe that attraction is a false attraction for the following reasons. When the first rule in appeal lawyer school is go with your best issue. That's the golden rule. That's the primary rule. That's what's drummed into you in appeal lawyer school. Now, I don't always follow that rule, and I admit it's a hard rule to follow, but I still recognize that as best practices. And sometimes I break it, but most times I try and follow it. But I do recognize that it is best practices. Go with your best issue. Don't include second- and third-tier, fourth-tier issues because they confuse, they muddy the issues, and they drag down your lead issue. This was never a problem, although I have problems with it in many cases. This was never a problem in Mr. Miller's case because the arguments about quantity of drugs, role in the offense, and the weapons enhancement were never issues in the first appeal. They were never issues in the second appeal. Well, it is the case that they were contingent issues. I think all of them were contingent issues. Well, actually, I think the drug quantity was a potential real issue. I would disagree. Applying to the CCE conviction. Well, the CCE conviction, if it had been held by the judge, I would agree with that. But it was not. It was a jury verdict. It was a finding by the jury. I don't see how I could attack that other than by some extraordinary amount of insufficiency. But it was a jury verdict, not a judge finding. It was a mandatory life sentence. The trial lawyer didn't attack it at sentencing. I could not attack it at an appeal. This court would have laughed at me for trying to do that. I try and avoid the court laughing at me, and that's one of my second rules. I hope we never do that. What about the merits of that issue? You know, as I read the transcript, Judge Lambert did. He sat through the trial, and he said that he was making a reasonable foreseeability finding and determining the amount of drugs attributable to Mr. Miller. He listed various arguments, and then he said, quote, after listening to the testimony at trial and the evidence presented at trial, I find that the entire amount of drugs underlying the CCE conviction is attributable to Mr. Miller. Why isn't that enough? It's not enough for a couple of reasons. The first one that I don't want to harp on, but should be obvious, is that those facts that Judge Lambert listed occurred 10 years ago, and I don't know how many trials he heard in between them. But I think it's unreasonable to assume that he recalled a 10-year-old trial, well, actually two trials that lasted three and four months each, 10 years later, and could specifically point to facts that supported that conclusion. But more importantly, we need an opportunity to respond. We can't tell the judge, no, you're wrong, if we don't have anything to respond to. That blanket conclusion does not allow us to explore the issue. It must be particularized. And we've listed the cases that this Court has required for that particularization. That blanket statement is not sufficient. If I can return to the waiver, I would suggest that if the Court adopts the government's theory that these issues were waived because they weren't raised in the first and second appeal, it invites the appellants in the future to engage in briefs that are no more than 100 bullet points. I can see that some judges might like that. But I don't think that's the way to resolve the issue. And I say that because it would require appellants to engage in diagramming of alternatives and assign responsibilities to those and probabilities. An impossible task for most appellants, I would suggest, particularly in a complex case like this. One thing the record in this case does not demonstrate, but which is found in the record of the two trial cases, is in the second appeal, Mr. Miller's second trial, the appellants themselves engaged in a tremendous amount of litigation and argument between themselves on the amount of words, the issues involved, who would edit the brief, and who would make the decision on what issues to go forth and not. In fact, they came to this Court and filed motions that we had to litigate. I mention that because words are valuable. They cannot be wasted on alternative or possible issues. Okay, I think we've heard your argument on the forfeiture question, but on the merits of that drug quantity question, what more by explanation or by findings do you think is required? I mean, we have findings by the district judge as to Mr. Miller's leadership role in the conspiracy and his written opinion from 2007. It's true that a lot of time passed, but presumably the district judge also has access to the records of the proceedings. Did he have to go through and add up the drug amounts? What's your case on what more a district judge is required to do on the drug quantity question? He has to give more than that blanket. And we have jury findings. No, they have not. No, not small amounts to the top of that. I believe that this Court has approved many times cases in which they've taken suppliers, two or three kilograms a week, things like that, generalized statements that were testimony at trial that we could address and added those up over the life of an 18-month conspiracy. That's sufficient, but that was nowhere near what Judge Lamberth did in the present case. We have to have the ability to say, no, Judge, you're wrong, because we could not say that when the judge says, I listened to the evidence, he was the right-hand man, he gets the entire drug amount. I'm interested on the question about Mr. Miller's role in the offense and the ambiguity in the transcript between the statement of the standard by Judge Lamberth that corresponds to the three-point enhancement and the giving of the four-point enhancement. Are you arguing that the difference there is going to affect the drug quantity or not? No. The Court is required to make findings for the four-point enhancement. The District Court made findings for the three-point enhancement. How about on the firearm possession? The government says, well, you know, he was dealing drugs and the gun was found. The gun was found near some PCP. What's your position on why? I'm not certain I would agree with found near PCP. I believe the evidence is it was found near a container that had the odor of PCP. But under Bell, our decision in Bell, if it's conduct relevant to the offense, what's your position that here's somebody who is, his full-time job appears to be managing this drug conspiracy, and this quantity of drugs is, assuming that we rule against you on the first point about the quantity, the quantity of drugs is attributable to the conspiracy. What further nexus is required on facts like this? Well, a great deal of nexus is required. The drugs must be found in proximity to the weapons involved in the enhancement. There must be a clear connection between the firearms and the drugs found. There were no drugs found in the residence from which the guns were recovered. Or drug paraphernalia, right? I mean, we've had cases where it wasn't drugs, but there were scales and glassine bags or that kind of thing. And is it your position that there's no such facts here? There is a container which had the odor of PCP. Why isn't that enough? We don't know how close they were. We don't know what quantity the container was. It's for personal use. That's not involved in the drug distribution. And I would add that Mr. Miller was charged with PCP distribution on a number of counts and was acquitted on all of them. So there is a variation there. The guns found must have some relevance to the offense for which he was convicted. There must be some nexus and there must be some physical proximity. We don't know where the guns were found. We don't know where the drugs were found. If the guns, for instance, were in a safe, locked up, that's certainly not proximity to facilitate the drug transaction. But the final point I'd like to make is, as I stand here today, I do not know what weapons he was enhanced for. I saw you made that argument in your brief, but I think it's relatively clear. Judge Lamberth referred to the weapon at Colony, and he talked about a gun seized, a seized firearm at Colony, and that refers to Mr. Miller's residence, does it not? It does. So that just seems to me to make it clear. If it's clear to this Court, then I'm satisfied with it. It was never clear to me whether it was the guns other people used that Mr. Miller was associated with or the guns at Colony Road. But I think if it's only Colony Road, the government still failed its nexus for that enhancement. I mean, we have very little, but he does say the guns seized at Colony, and to me that seems to denote his own gun at his home. He did say that. Well, it doesn't hurt us. It solves the riddle of what guns he was enhanced for. That was never made clear, for instance, by the government in their brief. But it doesn't hurt us because we still have the failure to provide the nexus between the guns recovered and the offense for which he was convicted, that is, drug conspiracy distribution. Thank you. May it please the Court. Lauren Bates on behalf of Appellee of the United States. I'd like to begin briefly with our waiver arguments. The government maintains that an appellant did waive his ability to challenge at a resentencing the three aspects of the guidelines calculation that he challenges now, and that's because he didn't challenge those aspects of his guidelines calculation at the time that it was initially calculated and on direct appeal, save for the fact that he did in fact object to the two-point firearm enhancement at the time the original PSR was completed and drafted, which I think undercuts appellant's argument today that it would have been futile for him to have made objections and pursued the objections that he now advances to the guidelines. Are you meaning to say waiver or law of the case? Are you really coterminous? No, and I think perhaps I am inappropriately using waiver as a shortcut term to encompass both of the government's arguments here, which are that he is precluded from now at a second. You're relying on the chief judge's decision. You're trying to put this case in that framework, and what can be heard on return in a criminal case? Correct, within Thomas, but also within the mandate rule, which is what I would call the Blackson case primarily standing for, which is that both this was not raised at the initial appeal, which was an appeal from the convictions and the sentences imposed here, but also— But you do recognize that you can have a series of objections, which has, by the grace of God, from the defendant's point of view, the most severe problems get knocked out in his favor. Then some other issues arise. I mean, we've said that, and we have invoked a problem that counsel invoked of briefs just littered with contingent arguments, briefs that also applies equally at the trial court level. And I do recognize that. I think that it is important to hear one of Appellant's arguments that he made, both in his brief and today, is how do we know that the district court had a specific recollection of the facts that supported these various guideline calculations and enhancements when the trial occurred 10 years ago? And that's more support for the reason why Appellant should have raised these arguments at the time of the initial sentencing and direct appeal. But they wouldn't have been—I mean, they're just not relevant. Isn't the point that the first appeal gave relief, which then peels away part of the case and renders relevant and material to the sentence factors that really weren't? As Judge Williams put it, they were very contingent. Yes, theoretically, if you're playing a chess game with the sentence,  but that's a pretty demanding standard, and I'm not sure what it really serves. I appreciate the passage of time problem, but that's why we have transcripts and that's why you find people briefing. I recognize the difficulties that the court has pointed out. I think the government maintains its waiver argument, especially given that the guidelines calculations did drive the relevant sentencing framework for the RICO conspiracy count, which Appellant was sentenced on at that initial sentencing. And so Appellant would have had the incentive to make sure that the guidelines calculations were based on facts that he agreed with. But regardless in this case, even if the arguments are not waived or precluded from being raised now, the government maintains that the challenges to the guidelines calculations are meritless here. Before you leave your waiver claims, you cite Thomas at page 33 of your brief. Isn't it clear that the court there has confused law of the case with the doctrine of waiver through failure to assert an issue on an initial appeal? It cannot be the case that a district judge applying correctly law of the case to an issue somehow immunizes that decision from appellate review. That would be utter nonsense. Right? No, it is not immunized from appellate review because there was the opportunity to seek appellate review of that. Then you're talking not about law of the case, but as waiver through failing to pursue an issue in an initial appeal, which is completely different from law of the case. They're both doctrines aimed at saving time, simplifying life, and so forth, but they have completely different ingredients. I do think they have different ingredients, but here it seems to intersect. They don't really intersect. I was fascinated by your opening remarks. You especially thought that the defendant's position was worse because he raised the gun issue in the first sentencing. Surely that can't make him worse off. If he had not raised it, you'd be claiming that he'd waived it then, right? The real argument is that he waived it through not asserting it in that initial appeal. Correct. I think I used the reference to raising the two-point firearms enhancement solely to, as I think it serves in the government's view as evidence as to undercut the argument that appellate makes that it would have been pointless for him to raise any challenges to the guidelines calculations when he was being sentenced for the mandatory life CCE count. But that was an enhancement that was relevant to that, whereas here we're talking about quantities that only become relevant given the jury verdicts on the RICO count when that comes to the fore, right? So it's a little bit of a different posture, the conspiracy count when that comes to the fore. Let me ask you on the quantity. Is it not support for Mr. Miller's position that we have the court appeals in the first appeal saying there's not enough evidence to support defendant's control over Jay Ingram, and is there some quantity of drugs associated with Mr. Ingram that would therefore affect Mr. Miller's responsibility for the full quantity of drugs that Judge Lamberth attributed to him given the jury's finding on the CCE count? So I think as to that, no is my answer, and that's because when this court found in reversing the CCE conviction that appellant didn't exercise the degree of control that is necessary to support the CCE conviction over Ingram, this court found that appellant was in a buyer-seller relationship with Ingram. So these drugs that related to Ingram, appellant would still be held accountable for those drugs when it comes to determining drug quantity because all that's required is that the quantity be foreseeable, and it certainly is foreseeable when you are selling the drugs to Ingram. Do we know that the buyer-seller relationship covered all the drugs attributable to Ingram? I think that I don't know if there was specific evidence that every single piece of narcotics that Ingram dealt with and trafficked was actually purchased from or came from a buyer-seller relationship with Miller, but I think that the evidence both that the district court found that Miller was at the top of this conspiracy, that he was the co-leader of it, and as this court, in its opinion on the direct appeal, found that Miller and Island were involved in the entirety of this conspiracy, that that would support a foreseeability finding, which is what the district court found as it relates to applying the drug quantity. I have the same question for you that I asked Mr. Hart, which is, if we thought that Judge Lamberth really did intend to give a three-point enhancement for role in the offense, might that actually affect the reasoning that you just articulated? I don't think so because even if you were the manager or supervisor over the other co-conspirators in the conspiracy, this court has held in cases that that's sufficient to find that the entire quantity of drugs attributable to the co-conspirators is foreseeable to you, and here it certainly would be, but I also take issue with, I don't believe that the record supports the conclusion that the district court intended to find that Appellant was only a manager or supervisor. Just one more note, two more perhaps on the drug quantity. To the extent that Appellant had concerns that specific portions of the drugs that were part of the evidence of this conspiracy were not attributable to him, Appellant did not advance that argument, that specific argument before the district court, never asked the district court to make more specific findings trying to carve out certain drugs for Ingram, and in fact now suggests in his brief, I think it's footnote four if I'm not incorrect, that the bulk of the quantity came from one of the co-conspirators, Ames, who is one of the co-conspirators that this court on appeal found that Miller, Appellant, exercised that leadership role over in connection with this conspiracy, which again just further supports that the district court had a basis grounded in the evidence at trial here, as it stated when it found that based on the testimony at trial and the evidence presented at trial, the district court found that the entire amount of drugs was attributable to Appellant. You said you had a couple points. I don't want to interrupt you. I have a question about the gun bump, but go ahead. Yes, I'm happy to turn to that now. So what is the nexus? I mean, if somebody's a gun owner and they have a gun at home, as Mr. Hart was hypothesizing, maybe it's locked in a safe and he's also a full-time drug dealer, don't we need some nexus articulated by the district court? I think it's pretty clear that the gun he's talking about is not one of the guns that the evidence showed people were running around with. It wasn't the gun that he had at home. So what's the government's position on why that enhancement applies? So here the government's position is that the district court found that Mr. Miller, the quote is, was in fact in possession of a firearm during this drug conspiracy based on the evidence that the court heard and saw. Appellant never requested further, more specific findings from the district court as to the basis of the district court's belief that there was the nexus, the connection, the relevance. So any review would be for plain error now. And the appellant cannot demonstrate that the district court plainly erred, given the ample evidence in the record that the gun was recovered from appellant's home in June 2004, which was during the life of the appellant's active involvement in this conspiracy, given the evidence that in appellant's home when the search warrant was executed, also recovered was the vial that smelled of PCP. But in addition to that were bottles of acetone, an agent that is often used to cut or dilute PCP, tools of the drug trade, which puts this again both in time and in proximity to conduct that is relevant to the drug and narcotics conspiracy here. I see that as an argument that had Judge Lamberth articulated it could support the gun bomb. The question is, is that what he was thinking? I mean, the PCP, Miller himself is acquitted of PCP conduct. It doesn't mean that it can't be brought in on sentencing by a finding, by the preponderance or whatever. But it does, it seems to me, clear the slate and requires something, or at least arguably. I guess I'm just asking you, does it? So I don't think here where appellant didn't object and didn't request those further findings. He objected to the gun bomb. He objected initially to the application of the gun bomb. The court addressed the application, found that it was going to apply the gun bomb, that Mr. Miller was in fact in possession of a gun during the conspiracy. Appellant never made the argument initially that, you know, oh, there's not enough of a nexus between that gun and the conspiracy, and didn't ask the district court, can you elaborate on your basis? Please provide findings for this. And under this court's case law, the government submits, that subjects this claim now to review for plain error. So is that required? You know, this comes up a lot where somebody makes an objection, the judge addresses it, and I think government lawyers have different views on this. Are you supposed to then, is the defendant supposed to then say, well, you know, you've addressed it, I'm not satisfied. And I don't think a lot of district judges actually expect that there's going to be further critique of what they've just done to preserve for appeal. I think to the extent that the challenge on appeal is that the district court failed in articulating sufficient facts at the time of sentencing to support the enhancement, yes, a further objection is requested. What's your support for that in our case law? The court's brief indulgence. The notion that there's this requirement, you've made an objection, the court has dealt with it, and then you don't like the way the court has dealt with it. In order to preserve that for appeal, you have to reobject. Yes, I apologize, I will. I think that we cite on page 29 of our brief MAC for the proposition that when a defendant fails to object to the adequacy of the district court's findings, review is for plain error. And I'm happy to find additional cases to support that proposition if the court would like. But again, here there was, the district court made findings, and there was certainly ample evidence in this record, especially given this court's recognition and the evidence at trial that supports the link between drugs and guns. There was evidence at trial that numerous other of the co-conspirators had guns and carried guns in connection with the drug activity here. That's right, and that sort of is rolled into Judge Lambert's comment. Possess guns, use them, but that's sort of balling together a lot of things. I mean, he doesn't, there were other guns, but given the reference to colony and the gun seized at colony, it seems pretty clear that Judge Lambert meant the gun that Miller had at home. So in that way, I think that a little bit makes the government's position, confines you to linking his conduct. Correct, but I think in linking even to that gun, even to the colony of guns, I think it was three, that it is relevant, and the fact that other co-conspirators are arming themselves with guns during the course of this conspiracy supports that the gun that Miller possessed in his home was possessed during conduct relevant to the narcotics conspiracy here. He's at the top of this conspiracy. He's trafficking in $20,000 of drugs. I think the evidence was a week at times. There is a well-recognized link in this court's case between drugs and guns. It's played out at the evidence at trial here. The gun is found during the life of the conspiracy in proximity to the tools of the drug trade, and the government submits that that is ample evidence to support the district court's application of the gun bump. Before you sit, counsel, can you just tell me clearly now, because I'm still not sure what your argument is. Waiver law the case. Your brief is not clear on this. I think it matters. It's the focal point of your argument. It's where you started, and you used both terms in the brief, as I recall. They're not the same. What is your thesis? And Judge Williams has raised a question for it. What is your thesis, and how are you playing it out in your mind? Because I'm really not following it at all. As far as you are concerned, it's crucial to your argument. It's your lead argument. I apologize for any lack of clarity. Well, it's just you're using two different concepts, and I'm trying to figure out which one, and then how do you defend it? So I think that the argument is both an argument that is a strain of law of the case, but that the law of the case argument arises from the fact that Appellant did not make these challenges at the times when he had an opportunity before. If the court decides that the conditions on the first appeal were such that not raising the issue waived it, there's no occasion to go to law of the case. If the court decides that it was quite proper for the appellant not to raise the issue on the first appeal, I don't see how that transforms the district judge's decision into something that's invulnerable under the law of the case doctrine. Right, because by hypothesis it hasn't addressed the issue, the particular issue. And I do think that together the government's arguments do hinge on this idea that the government maintains that it was not appropriate for Appellant to have failed to raise these arguments at prior occasions. Basically it seems to me for different issues you have different claims. One is forfeiture by failing to raise at the district court. The other, specifically the gun, is forfeiture through failure to raise in the course of the appeal. Right or wrong, those arguments stand or fall without any reference to law of the case. No? If not, why not? Correct. Yes, I agree. It would be better if some opinions of this court had not thrown in references to law of the case. Very well, thank you. We ask that the judgment of the district court be affirmed. Thank you. Thank you. Does Mr. Hart have time remaining? Mr. Hart has not had any time to speak. Mr. Hart, we'll give you three minutes. Thank you. Following up on this, I'd like to hear again your response to the query that your failure to raise doesn't make sense in light of the fact that even if the CCE was going to be vacated, it would have reduced the sentencing range. So there was an incentive for those issues to be raised earlier, and your failure to do so should cost you nothing. That's an impossible . . . I mean, your efficiency argument isn't doing it for me completely. I hear you, and I think it's kind of a shrewd way to cloud it, except I'd rather get back to the reality that there was some gain for the defendant in raising those issues earlier because it would have changed the range. In other words, it is an alternative argument that is meaningfully raised at the earlier stage, and your failure to do so is a type of waiver forfeiture. That's a whole other question, but in any event . . . And I wasn't satisfied with your first answer because I don't understand it. I'm not buying your efficiency argument as a complete answer to the question. So what . . . is there a further answer? There's a further explanation. I hope it satisfies the court. First, I would make the observation that Mr. Miller's CCE sentence was not a guideline sentence. It was a statutory mandatory minimum. There's nothing to challenge in the guidelines that would change that. If I were to come before this court in the second appeal, which involved the second trial, and say that the jury verdict, the jury special finding of so many 30, 15 kilograms should be vacated, I would have a hard time coming up with a reason for that based on the evidence and the standards by this court for insufficiency that would prevent this court from not making fun of me. I couldn't make that argument then. I can make the argument now that the district court, when he adopts that quantity, has to justify it other than saying the jury reached that verdict. I thought he also said he heard the evidence and he thought it was sufficient. All judges hear the evidence, and all judges say that my point is . . . They don't always invoke their recollection of the evidence for . . . But the government raises an important point. For instance, we asked for specificity. The government says, well, in the appellant's brief, we mentioned Mr. Ames. Mr. Ames did testify at trial that that amount was involved. If district court had said to me, I rely on Mr. Ames, then I would have had the opportunity to examine Mr. Ames' testimony and tell the district court that he had no idea of the quantity, and he was only telling that to the jury in court because that was part of his plea agreement, because the government had told him the amount of drugs involved, and he had to agree to it to take the plea. That's what I would have told the district court if it had said, I rely on Mr. Ames. That doesn't go into minutia. That only requires the district court to make one reference to a witness, and we would have responded in that way. We would have denied that. We ask the court to send the case back. Thank you. Mr. Hart, you were appointed by the court to represent Mr. Miller in this case,
judges: Pillard, Edwards, Williams